Good morning, Your Honors, and may it please the Court, Stephen Halpin on behalf of Appellate Candel & Partners, SAS. The Supreme Court observed over 20 years ago in Intel v. Advanced Microdevices, quote, Section 1782 is the product of Congressional efforts over the span of nearly 150 years to provide federal court assistance in gathering evidence for use in foreign tribunals, end  And in Texas Keystone v. Prime Natural Resources, this Court cited the Second Circuit's observation that Section 1782 is intended, quote, to encourage foreign countries, by example, to provide similar means of assistance to our courts, end quote. It's no secret that the United States has broader discovery than many other nations. That fact informs the design of Section 1782. Here, there is no dispute that Candel has satisfied the statutory elements of Section 1782. Candel is an interested person that seeks discovery for use in the underlying proceeding, the underlying French proceeding, and it seeks it from ExxonMobil, which is found in the Southern District of Texas. The central issue on appeal is whether the District Court properly analyzed the four discretionary factors articulated by the Supreme Court in Intel. It did not for two reasons. The first is the threshold reason that the lower court failed to explain its decision, quashing all Section 1782 discovery sought by Candel. Could I ask you what the current status of your action is against Esso is in France at this time? Yes, Your Honor. So this is not in the record on appeal. My understanding is that there have been some discovery requests propounded by Candel to Mr. Amieux, who's the CEO of Esso in that proceeding. The French Court has not ruled on those requests and has not had a hearing on those requests. So from our perspective, there's been no material development. No material development in the sort of akin to shareholder derivative suit litigation there. Is that correct? No developments except a little bit of discovery requests? My understanding is that discovery has been propounded. I believe that Mr. Amieux has resisted that and the court has not ruled on that. Okay. Thank you. That's my understanding, yes. Thank you. So the failure to explain the decision to quash all discovery, that's error under the court's precedent and it's sufficient for this court to vacate and remand. As to the second reason that the lower court erred, if this court analyzes the intel factors in the first instance. When you say failure to explain, do you believe the court can consider what the district court said at the hearing or do you believe it must be contained only in the order? So the ruling, the main ruling that we appeal from is the oral ruling at the end of the hearing. That's on May 13th. Okay. And so that's at record 2007 to 2008. So that is, that's the oral ruling. The balance of authority cuts sharply towards Exxon. Exxon may not be a participant directly in the French action, but I have doubts about the integrity of the foreign tribunal. I don't think the tribunal needs or would be receptive to help from a, I have no doubts about the integrity. Thank you. I don't think the tribunal needs or would be receptive to help from a Texas court. I think there's some circumvention going on. The request is way too broad and intrusive and burdensome. So that's what you think is not good enough? Yes, Your Honor. And it's not good enough. And those are merely conclusions. And under this court's recent decision in Paramo, the panel's unpublished decision in And as well, going back to Texas Keystone, it's not enough simply to essentially recite the intel factors without explaining why they favor the respondent. And that's what we maintain was the case here. And I'll point out that this comes after the district court had previously granted the application, obviously ex parte, in a short order. So the posture here is we have, what we maintain is no analysis, simply stating a conclusion as to each factor. And we think that's what's insufficient. Well, isn't there some analysis about the wording of the categories of documents? Isn't that some analysis? Am I wrong on that? If we're looking at 2008 of the record, Judge Ellison said, I think the request is way, way too broad and intrusive and burdensome. But that is also, that is error under this court's precedent in WEWA, which was extended to the 1782 context in Texas Keystone. So where is this transcript? I was also concerned, Mr. Stein, about the wording of some of these, like the second category of documents, documents sufficient to understand the group's transfer pricing policies. Where is that? So that's in the hearing transcript. But to be clear, under this court's precedent, including in the N. Ray Lloyd's case, the questions that was cited in Bravo Express, questions asked by the court during argument are not reasoning for the decision. I'm not sure how anybody would know how to respond to that. That seems like reasoning. That he's saying the question is so broad that you couldn't respond to it. Transfer pricing may have changed over time. It may be implicated by other variables. It's every price document that ESSO has with ExxonMobil would be implicated. He's saying that it's vastly overbroad, and he doesn't know how anybody would answer it. Isn't that analysis? No, it isn't, Your Honor. And I don't think my friend on the other side has raised that this is part of the decision. We certainly don't believe it is. And I think there are a couple of other points there. And that's that Kandel, throughout his offer to narrow the discovery, saw it. It did that before ExxonMobil moved to Quash, after the original subpoenas were served. Kandel has never conceded that they're overbroad. But Kandel reached out affirmatively. This is in our brief at pages 13 to 14, records 1783, 1786 to 90. So Kandel affirmatively tried to negotiate the scope to something that ExxonMobil would be more comfortable with, and it did that after the motion to Quash was filed as well and sent a narrowed subpoena to ExxonMobil. And that's indicated in the hearing. But that's not the one that was ruled on, was it? Well, that's the issue, is that this court's precedent is very clear that the district court should consider narrowing before Quashing outright. And so the district court- What's your authority that says that we can't look at the entirety of the hearing to determine the reasoning for the decision? I think that's- What case says that? It's unpublished, but the Bravo Express opinion, which- Says you can't look at other comments that the court made. You can only look at the one little paragraph or sentence the court gives in giving the ruling? Bravo Express says that the appellate court cannot infer the district court's reasoning from questions by the court at argument or from the party's briefs- What about from statements made by the court as part of the questioning process? I don't believe so, because that isn't the ruling. That is questioning- I think there was even a brief recess before- It could be a mistake, and I don't want to misstate the record. But I believe there was a brief recess when the district court had heard the argument, came back on, and delivered his oral ruling. And I think that's consistent with this court's decision in In re Lloyd, which is cited in Bravo Express, that the reasoning has to be generated from the district court. Right, but I just think that a lot of district courts who have hearings and give their rulings, and in fact, they'll type it up as a minute order or whatever after they rule on summary judgment or whatever, even at a hearing, and they use their oral thing, and they give you that as the transcript of that, and that's your ruling, they would be surprised, I think, to think that things that they say throughout as they're going through it can't be considered. And so that's why you would have to reiterate everything again at the end, instead of, well, I've made that statement about, well, it's definitely overbroad, and that's pretty clear that that's what he said, and then went on to the next thing, and made some comments, and asked some questions. And then why would that not be, you're getting this all from this unpublished case that doesn't actually talk about reasoning of the district court throughout the hearing. So, Your Honor, I think a couple of things in response. The Bravo Express hearing was, the transcript was 72 pages, which is twice as long as the hearing that was held here. So, in the Bravo Express case- Are you asking us to remand so that the district court can spell out the reasonings better? Yes. So you still lose? What's that? You'll still lose, but you at least get the paperwork done. No, no, I don't think we still lose at all, and in fact, I'm happy to talk about why the record favors this. You think the district court would contradict himself? I think so, and I think maybe your question, Judge Hogue, gets to a larger point, which is a process point, and we're talking about the respective roles of the appellate courts and the lower courts within the judiciary, and this court is a court of review, not a first view. It should not be wading through the intel factors in the first instance to decide whether there's record evidence that bears on them, and the district court didn't do that. So, we do, and we think the arguments are strong, that they favor discovery, at least some Section 782 discovery. But just to be clear, I think there was quite a bit of discussion. It's just not in the, it's in one place in the record and not in the other. I think that's the point of your exchange with Judge Alron, Chief Judge Alron. I think, too, that, again, this is not an argument that ExxonMobil has made, and I think it's clear from the Enright-Lloyds case that you can't infer that the lower court's reasoning from its questions, and there's specific 1782 jurisprudence from this court, including in the Paramo case, that says that the court must meaningfully engage with the intel inquiry, and again, too, just on this, kind of what I would say goes to the fourth intel factor, the over-broadness. Here, the record is clear that Kandel offered to narrow the subpoenas. ExxonMobil refused. They made an offer after the motion to quash was filed. They even tried to narrow further in the motion for reconsideration. So, in our view. Let's talk about the narrowing. Who's in the best position to narrow this? The district court said a motion to alter the judgment of a reconsideration isn't the appropriate place to narrow a subpoena. Having had a little experience with discovery disputes, sometimes you can't tell where the line is. One party wants everything, and the other party wants to give nothing, and it is hard to draw that line as to what is really needed and appropriate. So, who's in the best position here? In other words, why not just issue a new, narrowed subpoena? Yes, Your Honor, and the parties, I think, generally are in the best position, and it's better for the parties to try to resolve these issues without seeking court involvement. I think that applies beyond the 1782 context, and I think, again, the record is clear that Candell sought to engage in that process and was rebuffed. And as to the fourth intel factor, why that's relevant, as the case that they cite in their brief, Venequip, they ding the 1782 applicant for not engaging in those efforts and say that's the reason the fourth factor cuts against the application, which is the inverse of what we have here. So, how can- Isn't this distinct, though? The district court pointed out in several places how overbroad it thought these discovery requests were. It asked about the number of parties, and the answer was more than 1,000. It asked, it specifically said, I don't know how anyone answers. It, to me, sounded like it was struggling with the breadth and couldn't tell how to narrow it. So, even if you don't have agreement, why isn't it more incumbent on the party requesting to really start to narrow it down, unless you're doing an all or nothing approach, in which case you win or lose, and you lost. Well, Your Honor, I think that's exactly what Candell did here. Again, they send a narrowed subpoena to ExxonMobil after the motion of caution filed after ExxonMobil refused to engage. Is it a narrowed subpoena, or is it a, was it further negotiations? It was a narrowed subpoena, and it wasn't filed, so unfortunately it's not on the record, but it's undisputed, and it's at record 1993 to 94, where this is referenced. And also, then, on the motion for reconsideration, Candell submitted two document requests, right, two categories of documents, a redacted version of ExxonMobil's transfer pricing manual, and the schedule to ExxonMobil's tax filings that shows ESSO's aggregate intercompany transactions with the ExxonMobil group. That's at record 1875, so that's very narrow, you know, that was raised in the context of the motion for reconsideration, but we think it shows that it was an abuse of the district court's discretion to say, to throw up its hands and say, no, you're asking for way too much. That's not what the record reflects. We were working to narrow the subpoena. Is there anything that would prohibit you from requesting relief on a new subpoena? I don't think it's, if Your Honor is asking whether we would have to refile the 1782 application. What would be the harm in that? I mean, are you barred from pursuing that now, or? No, I do not believe that we're barred, but. If you have something that's not in the record, that's a narrowed subpoena, and that's what you want the court to rule on, why is that not what the court should have a chance to rule on? I think, Your Honor, because the issue here is that these, I mean, in these cases, it is expected that there will be some give and take, like any civil litigation. It seems burdensome for us to have to refile and serve a new subpoena. More so than having an appeal and coming to New Orleans? And I'm just, it seems like this is a more burdensome process than filing a new subpoena, if when you already have it drafted, but perhaps I'm wrong on that. I think you should be able to fully open, and we've asked you quite a few questions, and so I do think you should be able to say what your, why you win on the factors. You should, so I'm going to give you two extra minutes to do that, and give the other side two extra minutes as well. Thank you, Chief Judge O'Rourke. I think on the first intel factor, it's undisputed that ExxonMobil is not a party to the foreign proceeding. Judge Ellison still found, for reasons that are not clear, that the factor cut against the app and Candel, so we think that's an abuse of discretion. There's no reasoning. On the second factor, receptivity, this court has said repeatedly, including in Ecuadorian plaintiffs from 2010, that there must be authoritative proof that the foreign tribunal would not be receptive to the discovery sought, and we don't have authoritative proof here. It does dovetail with the third factor, this, you know, circumvention, you know, requirement for gathering proof restrictions, and. Can I ask about that third factor? Yes, Your Honor. The district court specifically asked Candel whether it did try to get these documents in the French proceeding, and Candel responded that it filed an application under the pre-action disclosure provision, which is the same provision that CIAM had used and was ultimately denied in the court of cassation decision. So isn't that essentially a concession, that you were seeking the same documents in this proceeding that the French court denied? No, it's not, Your Honor, for a couple of reasons. As a different procedural mechanism filed by a different party, well, so Candel also filed an application under Article 145. An identical one. But then it also, but the court of cassation's rulings, you can look at them, they're very short, they're procedural, they're essentially, well, this wasn't brought under the right provision in French as a civil law country. And then in the other one, it was, oh, well, CIAM didn't appropriately form its request under ESSO's articles of association. So that's not, in our view, that is not the French court saying, we do not want this type of discovery for any purpose. Now Candel has filed what is akin to a derivative action, a breach of fiduciary duty action. It's a different mechanism. The court in that case has not ruled on the discovery. So we do not think that the third factor, if anything, it's neutral, but we actually think it favors us. There's no restriction akin to a privilege as this court noted in Ecuadorian plaintiffs. And you did the fourth one already? I believe so, Your Honor, but I believe I have some time for rebuttal. Yes, you do. Thank you. Mr. Leffan. Thank you, Ms. Chief Judge, and may it please the court. The district court said enough, and its ruling denying 1782 assistance was well within its discretion, this court should affirm. Candel's procedural challenge to the court fails because the explanation that the district court gave here is far more robust than in any of the cases Candel cites as requiring vacatur. And the district court's explanation allows this court sufficient information to review that decision, which is all that this court's cases require. Some explanation enough to allow this court to determine whether or not the district court recognized and reasonably applied the intel factors. What do you say to your friend on the other side's point that, well, that those are within the context of questions, not as part of a reasoning at the end? Sure, Your Honor. So first of all, we did argue, in fact, that this court should consider the entire context of the record at pages 18 to 19 of our brief. And as you mentioned, Your Honor, that is far more of an explanation than it is a question. And so this court is permitted to consider that entire record. The cases that my friend cites, Bravo Express and In re Lloyds, are not the same as this case for the important reason that there was no explanation, no ruling on any factor. So what the court was saying that you can't use a record for is to determine the court's position on a factor. Here, we know the court's position on a factor. And this court has ruled, as an example, the sealed Appali case, that you can look, if you need more explanation to understand the district court's ruling, you can look to the record. And part of that are other explanations and other positions that the court took during a hearing. But also, courts do not decide in a vacuum. They decide the disputes put to them by the parties. And so if a party puts a two-sided dispute to a court, and a court rules in one way, it's not hard to determine the reason why the court ruled that way. If we were to think that it needed to be better grouped or explained and wanted to remand, like in Paramo, would that be a problem? Yes, Your Honor, because that would be an incorrect ruling. Well, Paramo says that we should let the district court lay it out better. That's basically what the problem was in that case. Well, right, Your Honor. But first, you need to determine that the district court didn't lay it out enough first. And this case is not like Paramo in the way that matters. The district court in Paramo issued a one-sentence order on the motion. No factors, no findings, nothing. It had a prior order in which it simply listed out the statutory factors and the intel factors and issued a collective conclusion. Again, did not individually identify each factor, as happened here. So what the purpose? So the thing is, the rules, if it says the factors and that's good enough, is that the test? Does it say them, or does it have to analyze them? Well, Your Honor, either way, the district court did analyze them here. But you actually touch on a fundamental problem with the premise of Kandell's procedural challenge here, which is that if this court decides that a district court's factor-by-factor finding after full hearing and full merits briefing is insufficient, there is no principled stopping point after that between some explanation and enough explanation. One more sentence, one more citation, one sentence per factor, one paragraph, Kandell doesn't say. And the Kandell can't say, because there is no principled stopping point. Whatever threshold this court sets beyond what the district court did here is going to result in collateral litigation over that, not just in 1782 cases. Kandell says in its brief, the principles that apply here obviously extend beyond 1782. Where is the factor-by-factor analysis at page 27 of 36 and 28 of 36? Your Honor, I'm happy to read the paragraph to you. But the district court said that it cuts sharply, that the analysis cuts sharply toward Exxon, that while Exxon may not be a participant, which is. I'm reading it. I do think that under the intel factors, the balance of authority cuts sharply toward Exxon may not be a participant. Yes, Your Honor. That's the first factor. Yes, Your Honor. Well, I think it goes on, Your Honor. I have to do no doubts about the integrity of the foreign tribunal. Sure, Your Honor. I don't think the tribunal needs or would be receptive to help.  Absolutely, Your Honor. That is factor one. I think there's some sort of convention going on. OK. So is that two and three? I think that there's some sort of convention going on. And the request is way too broad. How is there circumvention going on? Sure, Your Honor. Well, Your Honor only needs to look to the court of concession's opinion to see that there is circumvention going on. Because the French court said that an identical request by using a domestic assistance device under Article 145 of the French Civil Procedure Code was, in fact, a circumvention of the substantive French corporate law that restricts access to non-public information on management operations to certain minority shareholders. But did they say that you couldn't use that device, but didn't say that you couldn't have the information? Right, Your Honor. But that's not the test. The test is, so that actually goes to factor one. They can have the information when they convince a court that they are allowed to get it. That's factor one. They want to treat factor one as a formal requirement that the target be a party to the proceeding. That's not the inquiry. The Supreme Court in Intel used party status as an illustration of the true inquiry, which is the jurisdictional reach of the foreign tribunal. And here, it's clear that France has jurisdiction over this information. They've sought it in many different ways. And the circumvention point goes to a proof-gathering restriction. Not a prohibition, a proof-gathering restriction. And this court only needs to look at their application in the French court in the derivative proceeding. It's Exhibit 22 to their application, in which they say, talking about the court of cassation's judgment, this judgment thus considerably restricts the minority's right of action within the list of companies. It is more restrictive than those referred to in Article 145 of the French Code of Civil Procedure. That's Record 1210. They admit that this is a proof-gathering restriction. It is not a discovery limit. This is a product of substantive French corporate law. France has balanced the need to protect minority shareholders against the need to protect corporations from harassment by those with a limited financial stake in the company. I described a question earlier, but I misstated. It was actually a statement by the court, when it says, well, let me ask, isn't it the case that you did try to get these documents in the French proceeding? Is that the court addressing that factor? Your Honor, I think that, combined with the circumvention finding, that yes. I mean, that was the question put to the court. You have gone to France. The French court has turned you down, not because it's not within the jurisdictional reach of that court, but because your request runs afoul of substantive French corporate law. And that does tell the court. I thought it was the mechanism, though. It's not that it's substantive. It's the request through that mechanism. I disagree, Your Honor. This is not under the code of civil procedure. This is under substantive French corporate law. And so what, and the French ruling there, that you can't. Well, so should the court have analyzed substantive French law in order to help us with this? No. Because we're just kind of, we're saying something, they're saying something. The court just says it's circumventing, doesn't analyze it, and you are free to just argue whatever about whether it's procedural or substantive. And nobody has any analysis on it. The district court didn't. You all don't. The district court, Your Honor, has the applications pursued in France by Kandel, and it has the French rulings. And those are what tell you that this is substantive French corporate law. Importantly, Your Honor, the district court, this court, if it needs to, if it on this bone, can look at the two questions. There are the two sides of the coin that were put to the court on each question, if it needs to. But as we've said, it doesn't need to do that. Because the question under the abuse of discretion standard first, in order to determine whether or not a district court has given the court sufficient explanation, this court just needs to look at the abuse of discretion standard. The question there is whether or not the district court omitted a significant factor, considered an irrelevant factor, or unreasonably weighed competing factors. The district court's explanation here allows the court to do that. And in fact, it shows that the district court did not abuse its discretion. On the factors just more general, Your Honor, and Your Honor talked about the value of a remand here on factor four. First, I want to address factor four on its own, because I think it's important to recall that Kandel's primary position in its opposition to the motion to quash was not that the court should narrow. It has a line about narrowing. And then it says, but this court does not need to narrow. Its primary position was that its subpoena was fine. And it talks about proposed subpoenas sent to Exxon. There was no proposed subpoena presented to the court to determine whether or how narrowing would be possible. And no remand would be valuable here, because the court has already found the other three factors weigh against it. And so there's no reason to modify a subpoena that runs afoul of those other three factors. And in fact, modifying it. Are you supposed to just count the factors? Your Honor, what this court does in an abuse of, the explanation requirement is to facilitate this court's abuse of discretion. I know, but you said if you get three, you win. I mean, is that the way it works? Yes, Your Honor. It can be, so long as there's nothing obviously problematic with the district court's ruling. So what if they were to submit the new one? They are currently racially cut apart from doing this litigation again.  Because there is a judgment against them, Your Honor. No, but if it was a new subpoena that was narrowed. I think, Your Honor, if it was a new subpoena, if Your Honor is talking about a new proceeding. Yeah, they could file a new one with the narrowed one that didn't get submitted to the district court. Yes, Your Honor, that would be barred by race judicata. Why would that be barred by race judicata? They haven't submitted that subpoena yet. Because they could have done that, Your Honor. Because they could have done that, and there's a judgment denying their belief. They've gone for the shot on the broad one, and then they can try a narrower one. I don't think that repeat litigation, as they try to present a subpoena. It's a different subpoena. Your Honor, it's a different subpoena the same way that a claim can be different, because you seek a different sort of relief. It doesn't matter for race judicata. Ultimately, this court doesn't need to consider race judicata in the first instance. I'm simply being clear to the court that there is no option. You're not forfeiting your future race judicata. But you're also not saying that the court should have considered their narrowed subpoena. Well, it couldn't, because they didn't present any narrowed subpoena to the court. That was their option. Instead, they made the primary argument that the subpoena does not need to be narrowed. Ultimately, Your Honor, the purpose of 17. Did they argue in the alternative that it was narrowed? And can't you make alternative arguments? Their alternative argument was a sentence that misstated the law that you have to modify before you can quash. Was the subpoena present, the narrowed subpoena, presented as part of the negotiations to try to narrow or to get some cooperation from Exxon? Or was the narrowed subpoena actually served? That is not in the record, Your Honor, and I'm not sure about that. I think either way, I think my friend said that it was not served, or at least said it wasn't in the record. I don't believe it was served. I think if it was served, they would have told the district court about that. And more fundamentally, Your Honor, their argument about meeting and conferring puts the cart ahead of the horse here. Because as this court said in Banco Pueo, you don't get to the traditional domestic discovery operations until you've cleared 1782. So even though this is a motion to quash, the ultimate question here, because it was an ex parte application first, you need to have full adversary testing on whether or not you make it through that gateway under 1782. And so by requiring Exxon Mobil to meet and confer under a traditional domestic subpoena, this court would be running afoul of Banco Pueo's instruction that the other party is not to be prejudiced because the applicant chose to go through an ex parte process. Here, they never cleared 1782. And so you don't get to the point where you're sort of treating this like a normal domestic discovery dispute. Isn't the court granting leave to serve the subpoena clearing 1782? No. No, Your Honor. And this court made that clear in Banco Pueo, which is that you can grant that, but still the ultimate question remains. Because to really clear 1782, there has to be full adversarial testing or at least no objection from the other side. Otherwise, what a court would be doing is exactly what Banco Pueo said you can't do. You can't treat the target less favorably because the other side used the ex parte process. And so the result of what Kandel is asking for here is that everyone will go through an ex parte process, even though this court said it's unusual, in order to gain an advantage on the target. And that's exactly what Banco Pueo says you can't do. Ultimately, 1782's purpose is to promote comedy and set an example for the rest of the world, thumbing our nose at French substantive corporate law and French judicial rulings while unnecessarily burdening domestic parents of foreign subsidiaries is not the example that we want to set. And if this court were to rule in Kandel's favor here, again, a substantive issue in the underlying litigation is Kandel's right of access to this information. This is not simply a discovery dispute. Their right of access is what they're suing over in the French court. This is equivalent to someone making a books and records request here and then going to a foreign court and simply getting the records from the US company here. Everything that they have done here suggests an abuse of 1782. And the only correct decision by the district court was to deny their application, which is what happened here. If your honors have no further questions. Thank you. We have your argument. You've saved time for rebuttal, sir. Thank you, Chief Judge Alrod. I think just to pick up very quickly on one of my friend's last point here, this is not the underlying French proceeding that's at issue is not simply a right of access request. It's not a books and records request. It's a derivative suit against the CEO of ESSO and alleges over a billion dollars, over a billion euros in damages. So that's just wrong as a factual matter. And I think, too, the colloquy with your honors really, I think, drew out why vacate and remand is appropriate here and not simply affirming and allowing Candell to file another application. And that's because Exxon Mobil will argue in the district court that we're barred from doing that. And that's obviously a real concern. And I think the way to deal with that, if the court is inclined to vacate and remand, as this court has done in Bravo Express and Texas Keystone, this is an unpublished decision. It's not in the briefs. But it's to remand on an expedited basis and for the panel to retain jurisdiction over the appeal. And that's what the court has done on a number of occasions. And I think that, from our perspective, is a much preferable outcome than having to start from square one and facing litigation over res judicata from Exxon Mobil, which we just heard is what is likely to unfold in that scenario. And I think, too, in particular, on the third factor, the circumvention factor, I think this court can look to the Second Circuit's decision in Euromaipa. That's what this court did in Ecuadorian plaintiffs. Euromaipa was a French case. And there is this distinction between failing to facilitate discovery and barring it because the information sought is protected by a privilege or something similar. That's not the issue here. This information is not protected by a French privilege. And the decisions from the high French court are very narrow. They're saying, try again under a different procedure. And Candel has done that. They've sued under completely different articles of the French commercial code. So it's not this bar against discovery that my friend maintains. I think, too, if I could, in response to your question, Chief Judge, I'll write again. This is from Bravo Express. This is unpublished, but we pointed this out on page 25 of our brief. It's in footnote 5. An explanation for the court's ruling, quote, must be generated by the court, not inferred by the appellate court from the submissions of the parties or from the district court's questions and remarks, end quote. And that's citing the Enright-Lloyds case. And if we look back briefly at the hearing transcript, again, at record 2007, I think, as I alluded to earlier, there is a short recess, that there's a demarcation on record 2007 at line 15 between the argument of the parties and the court's questions and remarks that are above that line and the court's decision, which is below that line. And in one of the final points that Kandel raised below at the oral argument, it was, I'm reading from record 2007, if the subpoena were overbroad, the solution would be for the court to trim the discovery rather than to quash it outright. So that was an argument that was raised multiple times to the court below, and we think it was required to consider modifying under this court's precedence. If the court has no further questions, we respectfully ask that the court vacate and remand on an expedited basis and retain jurisdiction over the appeal. Thank you. We have your argument. We appreciate both arguments and the cases submitted. The next case for today is 2025-40307, Alfie Mays versus Galveston County.